UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARQUITOS MAURICE WHITELAW,

                Plaintiff,

v.                                         Case No. 25-cv-1232-pp

DEPARTMENT OF CORRECTIONS, *et al.*,

                Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO SCREEN COMPLAINT (DKT. NO. 10) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Marquitos Maurice Whitelaw, who is incarcerated at Waupun Correctional Institution, filed a civil rights complaint under 42 U.S.C. §1983. The plaintiff has counsel and has paid the full filing fee. This decision screens the complaint, dkt. no. 1, and grants the defendants' motion to screen the complaint, dkt. no. 10.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). Because the plaintiff is an incarcerated

1

individual who is suing employees of a governmental entity, the court must screen his complaint under §1915A. The court will grant the defendants' motion to screen the complaint. Dkt. No. 10.

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him or her of a right secured by the Constitution or the laws of the United States, and that whoever deprived him or her of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

B.  The Plaintiff's Allegations

The plaintiff alleges that he has been incarcerated at Waupun Correctional Institution since September 2018. Dkt. No. 1 at ¶13. He allegedly suffers from mental health issues that have caused him to commit self-harm throughout his life, including five or six times since his incarceration at Waupun. Dkt. No. 1 at ¶14. The defendants allegedly knew of the plaintiff's history of self-harming. Id.

The plaintiff alleges that at 12:15 a.m. on November 2, 2024, Correctional Officer Kyle Brandt (not a defendant) heard the plaintiff say that he had a razor and intended to harm himself. Id. at ¶¶15-16. Officer Brandt allegedly promptly notified defendant Lieutenant Jenny Vaillancourt of the situation. Id. at ¶18. The plaintiff says that Vaillancourt contacted defendant Lieutenant Collins and then instructed Brandt to leave the plaintiff's cell front because the plaintiff had not shown him the razor. Id. at ¶19.

Brandt allegedly conducted cell checks on the plaintiff at 12:30 a.m. and 12:45 a.m. Id. at ¶20. At the latter cell check, the plaintiff allegedly showed the razor to Brandt. Id. The plaintiff alleges that Brandt notified Vaillancourt that the plaintiff had shown him the razor. Id. at ¶21. Vaillancourt allegedly instructed Brandt to leave because the plaintiff was not harming himself and "only trying to seem to be taking all [Vaillancourt's] time away." Id. at ¶22. The plaintiff says that Brandt called defendant Lieutenant Jeffries to "express his dismay" over being instructed to leave the cell front of an incarcerated individual who said he intended to self-harm and who had a razor. Id. at ¶23.

3

Brandt allegedly told Jeffries that the instructions were against his training and that he was not comfortable leaving the cell front. Id. The plaintiff says that at 12:55 a.m., Brandt went to a supervisor to discuss the situation. Id. at ¶24. The two supervisors, defendants Jeffries and Collins, allegedly "detained" Brandt for about forty minutes to "explain the process" more clearly, all the while knowing that the plaintiff had the razor in his cell. Id. Vaillancourt, Jeffries and Collins allegedly made no attempt to enter the plaintiff's cell and confiscate the razor. Id. at ¶25.

The plaintiff alleges that at 3:00 a.m., he cut himself with the razor blade on his left forearm, just below the elbow. Id. at ¶27. The plaintiff allegedly lost significant blood and became unresponsive on his cell floor. Id. at ¶28. The plaintiff states that at 3:15 a.m., Jeffries discovered him in his cell. Id. at ¶29. About five minutes later, the cell entry team allegedly arrived, applied handcuffs and leg restraints on the plaintiff and placed him in a restraint chair due to his being unconscious. Id. at ¶30.

The plaintiff states that at 3:34 a.m., he was taken to the health unit to receive medical treatment for his laceration. Id. at ¶31. Defendant Nurse Brenda Roehrborn-Dorau (Nurse Brenda) allegedly administered glue and a band aid. Id. The plaintiff states that no other treatment was provided and at 3:45 a.m., he was placed back in his cell. Id. at ¶32. He says that the band aid fell off "[a]lmost immediately" because it was not sufficient to sustain the blood flow from the wound. Id. The plaintiff states that he was upset with Nurse

Brenda because he felt that the treatment she administered was insufficient and that she was "ignoring his concerns." Id. at ¶33.

The plaintiff says that he asked defendant Officer William Malames if he could see a staff member other than Nurse Brenda. Id. at ¶34. Malames allegedly advised the plaintiff that he would speak with a sergeant to try to obtain a different nurse to attend to his wound. Id. at ¶35. The plaintiff says that Malames spoke with a sergeant who said that another nurse was not available, and that the plaintiff would have to accept treatment from Nurse Brenda. Id. at ¶36. Malames allegedly did not relay this information to the plaintiff until the following month, when the plaintiff asked him to clarify the situation. Id.

The plaintiff alleges that at 4:05 a.m., the bandage was replaced but that no stitches or other remedial efforts were made. Id. at ¶37. The plaintiff allegedly had to rinse off the wound and treat it in his cell because it continued to bleed due to Nurse Brenda's failure to sufficiently deal with the wound. Id. at ¶38. Several hours later, at about 9:30 a.m., the plaintiff allegedly was seen at the medical facility and received six stitches to close the laceration. Id. at ¶39.

The plaintiff alleges that at about 6:45 a.m., he swallowed the other half of the razor he had in his cell. Id. at ¶41. He says that he was taken to Waupun Memorial Hospital for X-rays to determine the location of the razor blade, but the x-rays did not show the razor blade. Id. at ¶¶42-43. The plaintiff states that the razor blade remains embedded in his chest. Id. at ¶44.

The plaintiff claims that Vaillancourt, Jeffries and Collins violated his Eighth Amendment rights because they knew that he intended to harm himself and that he had a razor blade in his cell, but they let him remain in his cell instead of helping him. Id. at ¶¶45-47. The plaintiff also claims that Nurse Brenda was deliberately indifferent because he needed stitches to close the wound, but she used only glue, which was insufficient to stop the blood flow. Id. at ¶40.

The plaintiff claims that defendants Wisconsin Department of Corrections (DOC) and Warden Bradley Mlodzik were deliberately indifferent by depriving him of medical treatment and disregarding his serious medical and mental health conditions. Id. at ¶51. He claims that they failed to train institution staff and that they have a custom and/or practice of deliberately ignoring the complaints of incarcerated individuals or their need for medical or mental health attention. Id. The plaintiff claims that the DOC and Mlodzik have a history of "horrific inmate deaths" at Waupun, resulting in the previous warden and several staff members being criminally charged for misconduct and felony inmate abuse. Id. at ¶59. The plaintiff states that as of May 29, 2025, eight incarcerated individuals have died at Waupun since 2023, including two suicides, two fentanyl overdoses, a stroke, two undisclosed and one homicide due to probable dehydration and malnutrition, which shows a pattern of cruel and inhuman treatment. Id.

For relief, the plaintiff seeks compensatory and punitive damages. Id. at 14.

C. <u>Analysis</u>

Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act or fail to act with "deliberate indifference to serious medical needs of prisoners." <u>Whitaker v. Dempsey</u>, 144 F.4th 908, 916 (7th Cir. 2025) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). To succeed on an Eighth Amendment medical care claim, a plaintiff must show that (1) he faced a substantial risk of harm due to an objectively serious medical condition and that (2) a prison official knew of and disregarded the risk. <u>Id.</u> (citing <u>Palmer v. Franz</u>, 928 F.3d 560, 563-64 (7th Cir. 2019)). "A genuine risk of suicide or self-harm constitutes an objectively serious medical condition." <u>Id.</u> (citing <u>Lisle v. Welborn</u>, 933 F.3d 705, 716 (7th Cir. 2019) (suicide); <u>Miranda v. County of Lake</u>, 900 F.3d 335, 349 (7th Cir. 2018) (self-harm)).

The plaintiff may proceed on an Eighth Amendment claim against defendants Jeffries, Collins and Vaillancourt in their individual capacities based on allegations that they let him remain in his cell despite knowing that he had a history of self-harm, said he wanted to harm himself, said he had a razor blade and subsequently cut himself with the razor blade. The plaintiff also may proceed against defendant Nurse Brenda in her individual capacity for allegedly ignoring the plaintiff's concerns that the glue and band aid she provided for his wound did not stop the bleeding.

The plaintiff sues the DOC and Warden Bradley Mlodzik for allegedly having a practice of permitting incarcerated individuals at Waupun to harm

7

themselves. The plaintiff claims that these defendants are liable for prison officials' actions and that they failed to train prison officials. The plaintiff cannot succeed against the DOC or Warden Mlodzik under a theory of supervisory liability as head of the prison. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (supervisors cannot be held liable under §1983 for the misdeeds of their employees). Moreover, the plaintiff cannot proceed against Warden Mlodzik in his official capacity because the plaintiff seeks only monetary damages. For the purposes of obtaining damages other than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under §1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The court will dismiss defendants DOC and Warden Mlodzik.

Finally, the plaintiff may not proceed against defendant Malames because he has not alleged that Malames had any personal involvement in the alleged constitutional violations. The plaintiff alleges only that Malames asked a sergeant if the plaintiff could be treated by someone other than Nurse Brenda; the sergeant allegedly said no and Malames allegedly did not tell the plaintiff right away. The plaintiff has not stated a claim against Malames and the court will dismiss him.

## II. Conclusion

The court **ORDERS** that defendants Department of Corrections, Bradley Mlodzik and William Malames are **DISMISSED**.

The court **GRANTS** the defendants' motion to screen complaint. Dkt. No. 10.

The court **ORDERS** that defendants Jeffries, Collins and Vaillancourt must file a responsive pleading to the complaint by the end of the day on **January 23, 2026**.

The court **ORDERS** that the plaintiff must serve defendant Nurse Brenda Roehrborn-Dorau within ninety (90) days of the date of this order. Counsel may request another summons from the Clerk of Court, if needed. Defendant Nurse Brenda must file a responsive pleading to the complaint.

Dated in Milwaukee, Wisconsin this 29th day of December, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**